## THE STATE VS. JAMES ALLEN.

*Indictment, privately stealing in a dwelling house. Verdict,
Guilty on both counts of Indictment. Motion in arrest
of judgment, and for new trial.*

Causes of arrest of judgment are confined to objections, which arise upon the face of the record itself, and the Court must be governed by that alone, in determining them.

*It seems*, that if an existing indictment be altered by the prosecuting officer, and submitted, thus changed to the Grand Jury, who, again, return "True Bill" thereon, such informality will not destroy the *second* indictment, even though *Nol. Pros.* be subsequently entered on the *minutes*, in reference to the *first* indictment.

Evidence must be given, on an indictment for Larceny, that the thing stolen is of some value.

But it is not necessary, that the subject matter of the Larceny should be of value to third persons, if valuable to the owner.

Where the indictment alleged, that the notes stolen, were "notes of the Georgia Rail Road and Banking Company," and the owner proved, that he received them from such Banking Company, *held*, in the absence of all proof to the contrary, that this was sufficient proof of their genuineness, to support the allegation.

### By ROBERT M. CHARLTON, Judge.

THE motion in arrest of judgment, in this case, is based upon two grounds :—1st. That the indictment on which the prisoner has· been convicted of the alleged offence, has been quashed. 2d. That the indictment is defective, because there is no return of "true bill," endorsed thereon by the Grand Jury.

Causes of arrest of judgment, being confined to objections which arise upon the face of the record itself, I have made an attentive examination of the records and proceedings of the Court, in reference to this prisoner. On the 23d February, 1837, a true bill was found against him, for the offence of privately stealing, in a dwelling-house. On the 27th February, a second bill was found by the Grand Jury against him, for the same offence, and a third bill for simple larceny. The bills were entered on the criminal docket,

in the order in which they were found. On the same day, the Solicitor General moved, that a *Nol. Pros.* should be entered on the first indictment found against prisoner, and the minutes of the Court bear recorded upon them an entry of *Nol. Pros.* The criminal docket has opposite to the entry of the indictment first found, to wit, the indictment of 23d February, the words "*Nolle Prosequi*" entered. By an examination of the indictment of 27th February, I find no entry of *nol. pros.*, but on the contrary, the plea of the prisoner, and the verdict of conviction on the same day—and on the 28th February, a *nol. pros.* appears to have been entered on the indictment for simple larceny. There is nothing, therefore, either on the indictment, or any part of the record, which imports that the proceedings were inconsistent or repugnant, and which would make the sentence appear irregular hereafter. The prisoner's counsel supposes, that the indictments of the 23d and 27th February, were in truth the same; and that the Solicitor General changed the word "note" to "bill," wherever it occurred in the indictment of the 23d—and submitted that indictment, thus changed, on the 27th Feb. to the Grand Jury, by whom it was again returned as a true bill, and he offers as a truth of this assertion, the fact, that the indictment of 23d February is not produced with the entry of *nol. pros.* He contends, therefore, that the entry of *nol. pros.* which the Solicitor General moved should be made on the indictment of 23d Feb. and which the minutes of the Court disclose was made, was in truth a *nol. pros.* on the indictment of 27th February—it being the same paper, and that the prisoner was convicted on an indictment which had no existence. Whatever correctness there may be in the assertion of prisoner's counsel, it is not borne out by the record, by which alone I must be governed. The indictment on which prisoner was convicted, has upon it, in the hand-writing of the Foreman of the Grand Jury, the words "True Bill, *G. B. Lamar*, Foreman, Feb. 27, 1837." However informal it may be in the prosecuting officer, to take an existing indictment, and to make a material change in it, and to

present it to the Grand Jury, thus changed, for a second action, and however such change may affect the first indictment, I do not see how it could destroy the second indictment, or how I can determine, that a *nol. pros.* intended to be endorsed on one indictment, and declared by the proceedings to have been so entered, shall operate to discharge another indictment, not appearing by the record to be in any manner connected with it. I cannot even tell whether the subject matter of the larceny was the same in both indictments. I certainly am not bound to presume it. I must, therefore, dismiss both these grounds, as they are not sustained by the records of the Court.

The grounds in relation to the motion for a new trial, are, 1st. That the verdict is contrary to evidence, because there was no proof that the bank bills, which were the subject matter of the alleged offence, were genuine. 2d. That the verdict is contrary to law, because the bank bills, which were the subject matter of the alleged offence, were not proven to be the bank bills of the respective banks, as the indictment avers.

There is no principle of law better settled, than that in larceny, evidence must be given, that the thing stolen is of some value. Hence, it has been determined, that on an indictment for stealing a bank note, it must be proved to have been genuine. (*State* vs. *Tillery*, 1 Nott & McCord 9.) That decision was perfectly correct, with reference to the case then under consideration; but the circumstances of the present case are very different. The prosecutor here, swore that he received the fifty dollar bills, which formed a part of the subject matter of the larceny, from the bank, whose bills they purported to be. Unless we can presume that a bank would be guilty of the absurdity of issuing counterfeit notes of its own corporation, we have good evidence that they were genuine. But if they were not, I am not prepared to say, that the rule laid down in Nott & McCord, ought to be a universal one. Stealing a counterfeit bill, is certainly not larceny, as a general

[The State vs. Allen.]

rule, because the thing stolen must be of some value.   But it is
not necessary that the subject matter of the larceny should be of
value to third persons, if valuable to the owner.   The prosecutor
having received these bills from the bank, whose notes they pur-
ported to be, upon every principle of law, could have made such
corporation pay specie for them, whether genuine or not, and they
were, therefore, of the same value to him.   A somewhat analogous
principle may be found decided in *Ranson's* case, (Russ. & Ry.
232.   2 *Leach* 1090.   *Roscoe's* Crim. Ev. 512.)

And in reference to the second ground, I observe, that the bills
exhibited in evidence, and which were admitted by prisoner, to
have been taken from him, did correspond with the averment in
the indictment; and the fact that they were issued by the bank,
whose bills they purported to be, and therefore, in the absence of
all proof to the contrary, presumed to be genuine, seems to me to
have sufficiently proved the allegation, that they were bills of that
bank.   *Craven's* case, (in Russ. & Ry. 14) in which it was deter-
mined, that where a bank note was described, as being signed by
*A. Hooper*, some evidence must be given of the signature being by
him, is not a case in point.   There was no allegation here, that
the notes were signed by any one, but merely, that they were notes
of the Georgia Rail Road and Banking Company, and that, I think,
was sufficiently proved.

All this argument, of course, proceeds upon the supposition, that
the bills which *Stewart* lost, were the same found upon the person
of the prisoner.   The want of identity is not urged in the notice
given to the Solicitor General, for a new trial, but it was insisted
on in the argument of such motion.   The point of identity was
commented on by me, to the Jury, upon the trial, the evidence and
the law explained to them, and the facts left exclusively for them
to determine.   By their verdict, they have declared, that the iden-
tity of the bills was sufficiently ascertained.   Though such evi-

PART II.—O. 3.

dence was not of a positive character, yet there was strong circumstantial evidence to shew that prisoner was the felon, and I do not feel disposed to disturb a verdict, with which I cannot say I am dissatisfied.

A case strikingly analogous, in some of its facts, may be found in 1 Nott & McCord 91, (*State* vs. *Casados*)—and the Court there refused the motion—as all Courts ought to do, when acting in the exercise of a sound discretion, and with no doubt of the justice of the verdict.

Motion denied.

ALEXANDER DRYSDALE, for Prisoner—JOHN E. WARD, Solicitor General, contra.